UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN BENNETT,

Plaintiff,

v. CASE NO. 3:24-cv-280-SJH

EAST COAST WAFFLES, INC.,

Defendant.
_________________________________/

# ORDER

**THIS CAUSE** is before the Court on Defendant's motion for summary judgment ("Motion"), Doc. 21; Plaintiff's response ("Response"), Doc. 26; and Defendant's reply, Doc. 28. For the reasons set forth herein, the Motion is due to be granted.

## I. Background and Standard

Plaintiff asserts a single claim for negligence against Defendant based on a slip-and-fall incident at Defendant's premises on October 23, 2020. Doc. 8.[1] In this diversity action, Florida substantive law applies, but federal law determines whether summary judgment is appropriate. *Bernard Schoninger Shopping Centers, Ltd. v. J.P.S.*

[1] Plaintiff's pleading included a claim against an unnamed individual Jane Doe defendant, but that claim has been voluntarily dismissed, leaving only the claim against Defendant. *See* Docs. 34, 35, 38. The case was originally filed in state court but properly removed on the basis of diversity jurisdiction, as Plaintiff and Defendant are completely diverse (and the citizenship of the now-dismissed Jane Doe defendant was not to be considered upon removal, 28 U.S.C. § 1441(b)), and the amount in controversy satisfies the jurisdictional threshold. *See* Docs. 1, 12, 40, 41; 42; 43; *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83–84 (2014); 28 U.S.C. §§ 1332, 1441, 1446.

*Elastomerics, Corp.*, 102 F.3d 1173, 1177 (11th Cir. 1997); *Kroon v. Beech Aircraft Corp.*, 628 F.2d 891, 892 (5th Cir. 1980).[2]

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020). "The moving party bears the initial burden of proving the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party, who is required to 'go beyond the pleadings' to establish that there is a 'genuine issue for trial.'" *Whitehead*, 979 F.3d at 1328 (internal citations omitted).

The Court construes "the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party." *Id.* A genuine dispute of material fact requires evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). So "a mere scintilla of evidence" or "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Id.* at 1328–29 (cleaned up; citations omitted). And "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1170 (11th Cir. 2018) (citation omitted); *see also*

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Strode v. Wal-Mart Stores, Inc.*, No. 21-13470, 2022 WL 1641602, at *2 (11th Cir. May 24, 2022);[3] *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018).[4]

## II. Facts

Applying the foregoing standard, for purposes of the Motion,[5] the facts are as follows:

On October 28, 2020, Plaintiff visited the Waffle House restaurant on Lem Turner Road, where he had been a regular customer. Doc. 21-1 at 44. Plaintiff went to the restaurant with Gerald Jacobs and Jeannie Jacobs, a longtime friend and his wife. *Id.* at 47–48. Upon arriving, Plaintiff sat down and ate. *Id.* at 51. He did not see any dangerous conditions when he arrived, did not see anything out of the ordinary as he walked to the booth where he sat and ate, and had no difficulty walking to the booth. *Id.* After he finished eating, Plaintiff walked to the restroom to wash his hands

---

[3] Unpublished opinions are not binding precedent; however, they may be cited when persuasive on a particular point. *See United States v. Futrell*, 209 F.3d 1286, 1289–90 (11th Cir. 2000); 11th Cir. R. 36-2.

[4] As previously discussed, while Florida substantive law applies, federal law determines whether summary judgment is appropriate. *Bernard Schoninger Shopping Centers*, 102 F.3d at 1177; *Kroon*, 628 F.2d at 892. The Response relies on certain cases applying the summary judgment standard formerly applied in Florida, which materially differs from the standard in federal court. *See generally* Doc. 26; *see also Kincaid v. Walmart, Inc.*, 430 So. 3d 141, 146–47 (Fla. 4th DCA 2026) (discussing amendment of Florida summary judgment standard in 2021 to align with the federal standard); *LaSalle v. Prestige Motor Car Imports, LLC*, 420 So. 3d 1122, 1127 n.4 (Fla. 3d DCA 2025) (same). In addition to the factual distinctions and record in this case, this further distinguishes any such authority cited by Plaintiff. *See LaSalle*, 420 So. 3d at 1127 (distinguishing prior case on "two bases": first, the facts; and "[s]econd, and most importantly, [the prior case] was decided under 'Florida's old, subjective summary judgment standard, which disfavored summary judgments in a lopsided manner'" (citation omitted)); *see also Martinez v. GEICO Cas. Ins. Co.*, 152 F.4th 1323, 1332 n.5 (11th Cir. 2025); *Martin v. Allstate Prop. & Cas. Ins. Co.*, No. 8:17-cv-3056-02CPT, 2019 WL 1003166, at *7 n.4 (M.D. Fla. Mar. 1, 2019), *aff'd,* 794 F. App'x 883 (11th Cir. 2019).

[5] Given the standard of review, these may not be the actual facts, or the facts for other purposes.

and use the bathroom. *Id.* at 51–52. He did not have any difficulty walking to the restroom or notice any dangerous conditions when he did so. *Id.* Nor did he have any difficulty walking back to his booth or notice any dangerous conditions when he did so. *Id.* at 52–53.

When Plaintiff got up to leave the restaurant, he slipped and fell in front of his table. *Id.* When he slipped, he had no idea there was any substance on the floor, and he had not seen any substance. *Id.* He does not know how long the substance he alleges he slipped on was on the ground before he slipped. *Id.* at 54. Plaintiff does not know what he slipped on, but he was told by Mr. and Mrs. Jacobs and/or other unidentified individuals that he slipped on sausage. *Id.* at 53–55. Plaintiff, who did not know of any sausage on the floor before his fall, did not tell anyone about any sausage on the floor before his fall. *Id.* at 54.

The floors at the restaurant are mopped near the end of every shift (or three times a day) and swept throughout the day depending on need. Doc. 26-2 at 11–12. Defendant's corporate representative further testified as follows:

> Q Okay. Would you say spills happen during the first shift?
> A Of course.
> Q Are you able to put a number how many times do spills happen during a morning shift?
> A No.
> Q Would you -- can you say that it happens once a shift, two times a shift? Is it once a week, two times a week? Are you able to put a number on it?
> A No.
> Q Would you agree that it is expected that food will end up in the floor at Waffle House?

> A I wouldn't put it that -- I would say that it happens because customers drop things and children drop things. And so, there are -- there is food that ends up on the floor. Yes.

*Id.* at 27–28. In the three years preceding Plaintiff's fall, there were no other falls recorded inside the restaurant at issue. *Id.* at 33–34.

## III. Discussion

As the parties agree, *see* Doc. 21 at 4; Doc. 26 at 8, Fla. Stat. § 768.0755 "governs liability in premises cases involving transitory foreign substances in a business establishment," *see Speedway, LLC v. Cevallos*, 331 So. 3d 731, 735 (Fla. 4th DCA 2021). That statute provides in pertinent part:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

Fla. Stat. § 768.0755(1); *see also Speedway*, 331 So. 3d at 735.

In short, Fla. Stat. § 768.0755(1) "places the burden on the plaintiff to prove actual or constructive knowledge by the premises owner of the dangerous condition[,]" and it provides that "constructive notice may be inferred from either: (1) the amount of time a substance has been on the floor; or (2) the fact that the condition occurred with such frequency that the owner should have known of its existence." *Speedway*,

331 So. 3d at 735; *see also Publix Super Markets, Inc. v. Safonte*, 388 So. 3d 32, 35 (Fla. 4th DCA 2024). Defendant argues that there is no genuine issue of material fact and that Plaintiff cannot show the requisite actual or constructive knowledge. Docs. 21, 28. Plaintiff argues otherwise. Doc. 26. The Court discusses each potential basis of actual or constructive knowledge in turn.[6]

**a. Actual Knowledge**

"'Actual knowledge' of a dangerous condition exists when the business or one of its agents 'knows of or creates the dangerous condition.'" *Kincaid v. Walmart, Inc.*, 430 So. 3d 141, 148 (Fla. 4th DCA 2026) (citations omitted). This "requires proof that

---

[6] The Court notes that it is not clear there is evidence that Plaintiff in fact slipped on a transitory substance, as Plaintiff does not know what caused him to slip and fall but thinks it was sausage based on hearsay statements from Mr. and Mrs. Jacobs and/or other unidentified declarants. Doc. 21-1 at 53–55; *see* Fed. R. Evid. 801(c), 802. This shortcoming may independently undermine Plaintiff's case. *See Ausburn v. Wesley Chapel-T, LLC*, No. 2D2025-0516, --- So. 3d ---, 2026 WL 2880795, at *3–5 (Fla. 2d DCA Sept. 25, 2026) ("As to '[t]he dangerous condition exist[ing] for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition,' *see* § 768.0755(1)(a), it is undisputed that Mr. Ausburn cannot identify the substance upon which he slipped. Per his deposition testimony, he did not know if he slipped on 'oil, water, or what.' He also testified that he did not look down when he fully stepped out of the vehicle, and so he did not know if there was 'any sort of puddling' in the spot where his slip and fall occurred. Put simply, Mr. Ausburn cannot demonstrate Wesley Chapel Toyota's constructive knowledge of the substance that caused his fall because he does not know what caused his fall in the first place. Because it is uncontested that Mr. Ausburn does not know what liquid caused him to slip and there is no description of the liquid, there is no way to know if the liquid had 'existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition.' *See* § 768.0755(1)(a). Indeed, Mr. Ausburn admitted as much during his deposition. … As to '[t]he condition occur[ing] with regularity' and thus being 'foreseeable'—the second method of proving constructive knowledge under section 768.0755—to suggest a 'condition occur[ing] with regularity' contains as an essential element the presence of a condition. That is to say, a condition cannot be said to have 'occurred with regularity' if the condition cannot be identified. *See* § 768.0755(1)(b). Here, the condition is an unknown entity. Mr. Ausburn has affirmatively testified that he does not know what liquid caused his fall, and thus he cannot argue that the condition was a regular occurrence."). However, as the parties' briefing presumes that Plaintiff slipped on a transitory substance of sausage and focuses on application of Fla. Stat. § 768.0755, the Court will do the same. Indeed, as set forth herein, Defendant is entitled to summary judgment even assuming Plaintiff slipped on a transitory substance of sausage.

an employee knew the specific dangerous condition existed, not merely that an employee performed an action that *could* create a hazard." *Id.*

There is no evidence of Defendant's actual knowledge of the substance on which Plaintiff slipped. To the contrary, Plaintiff himself had no idea there was any substance on the floor, had not (and has not) seen any such substance, and did not tell anyone about any sausage on the floor before his fall. Doc. 21-1 at 51–54. Plaintiff's Response contains fleeting references to actual knowledge, but Plaintiff's arguments are directed to the two bases for showing constructive knowledge under the statute. *See generally* Doc. 26. A passing and undeveloped argument is insufficient to raise an issue. *See Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1356 (11th Cir. 2024) ("A party abandons an issue when she 'raises it in a perfunctory manner without supporting arguments or authority.'" (citation omitted)); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023) ("A party abandons an issue when she makes only passing references to it, references it as mere background to main arguments, or buries it within other arguments."); *see also Hunt v. Nordstrom, Inc.*, No. 3:23-cv-11-WWB-PDB, 2024 WL 2894394, at *2 (M.D. Fla. June 10, 2024) ("Although Plaintiff briefly mentions actual notice in her Response in Opposition, she fails to further elaborate on this argument or direct the Court to any record evidence that would create a triable issue of fact as to actual notice. The Court is not required to consider such vague and underdeveloped arguments."). Thus, Plaintiff has abandoned any argument as to actual knowledge. Regardless, as discussed, the record reflects an absence of

actual knowledge and Plaintiff has not directed the Court to any evidence from which a jury could find actual knowledge.

Thus, there is no genuine dispute as to any material fact such that a reasonable jury could return a verdict in favor of Plaintiff as to actual knowledge under Fla. Stat. § 768.0755(1).

**b. Constructive Knowledge**

Fla. Stat. § 768.0755(1) provides that "constructive notice may be inferred from either: (1) the amount of time a substance has been on the floor; or (2) the fact that the condition occurred with such frequency that the owner should have known of its existence." *Speedway*, 331 So. 3d at 735; *see also* Fla. Stat. 768.0755(1); *Safonte*, 388 So. 3d at 35. Each theory is discussed in turn.

**i. Constructive Knowledge under Fla. Stat. § 768.0755(1)(a)**

Plaintiff does not know how long the substance he alleges he slipped on was on the ground before he slipped. Doc. 21-1 at 54. Indeed, Plaintiff did not see any dangerous conditions when he arrived, when he walked to the booth where he sat and ate (which he had no difficulty doing), when he walked to the restroom (which he had no difficulty doing), and/or when he returned from the restroom (which he had no difficulty doing). *Id.* at 51–54. Thus, there is not a basis to infer constructive knowledge under § 768.0755(1)(a) based on the amount of time the substance was on the floor. *See, e.g.*, *Strode*, 2022 WL 1641602, at *3 (affirming summary judgment for defendant and explaining that the district court correctly assessed that the little available evidence suggested the liquid substance was not on the floor very long where the plaintiff and

her son both "testified they 'didn't notice anything' on the floor before her fall and that the amount of liquid involved was 'small'" and "had smeared when she fell and that the liquid was contaminated only with the debris deposited by her flip-flop"); *Phillips v. Surfside Ventures Inc.*, 821 F. App'x 957, 960 (11th Cir. 2020) (holding employee failed to show constructive knowledge under § 768.0755(1)(a) where "[s]he testified that 'there had to be something' on the step to cause her to fall, but she did not know what it was or how long it had been there").

Plaintiff argues that in determining whether a substance has been on the floor for a sufficient period of time, courts should "look for a 'plus' factor" such as "[f]ootprints, track marks, changes in consistency, and drying of the substance"; that a plaintiff's testimony alone can supply the necessary "plus factor" to survive summary judgment; and that "Plaintiff's testimony establishes multiple 'plus' factors" in this case. Doc. 26 at 10–11, 14–15. But Plaintiff cites no such testimony from Plaintiff, *see generally id.*, and the record reflects none. Rather, as discussed, Plaintiff testified to never seeing any substance (before or after the fall) or even knowing what he slipped on. Doc. 21-1 at 51–54.

Notably, the Response's Statement of Material Facts does not contain *a single* record citation—not one. Doc. 26 at 2–7. Nor does its argument as to constructive knowledge based on length of time or "plus" factors. *Id.* at 10–15. In fact, in the *entire* Response, the only record citation whatsoever is to five lines of testimony from Defendant's corporate representative deposition in connection with Plaintiff's separate

regularity and foreseeability argument, discussed below. *Id.* at 16–17; *see also generally id.*

Because the Motion discharges Defendant's initial burden of showing the absence of a genuine issue of material fact, this failure in the Response supports judgment as a matter of law as to the theory of constructive knowledge under Fla. Stat. § 768.0755(1)(a). *See Whitehead*, 979 F.3d at 1328; *see also* Fed. R. Civ. P. 56(c), (e); *Monarch Air Grp., LLC v. JPMorgan Chase Bank, N.A.*, No. 23-14191, 2026 WL 1004537, at *8 (11th Cir. Apr. 14, 2026); *Shannon v. Nat'l R.R. Passenger Corp.*, No. 1:17-cv-23314-UU, 2018 WL 8221663, at *6 (S.D. Fla. June 27, 2018), *aff'd*, 774 F. App'x 529 (11th Cir. 2019); *McCasland v. Pro Guard Coatings, Inc.*, No. 8:17-cv-990-T-27AEP, 2018 WL 5786164, at *2 (M.D. Fla. Nov. 5, 2018), *aff'd,* 799 F. App'x 731 (11th Cir. 2020).

Plaintiff appears to rely entirely on certain pictures that are embedded in the Response without any record citations. Doc. 26 at 3–6. Per Plaintiff, "unlike in *Rubiano*[7], the Plaintiff's testimony establishes multiple 'plus' factors. Photos of the grease from immediately after the slip-and-fall incident also show scuffing, footprints, dirt, changes in the consistency of the substance, and drying in some parts of the substance" such that "a reasonable jury could find that the grease substance and sausage existed for such a length of time that, in the exercise of ordinary care, Waffle House should have known of the condition." *Id.* at 14–15.

[7] Plaintiff's argument is not entirely clear, as no *Rubiano* case is cited in the Response, *see generally* Doc. 26, or the Motion, *see generally* Doc. 21. The Court construes the argument to be that the presence of "plus" factors make summary judgment improper.

There are multiple problems with this argument. For one, the photographs embedded in the Response are unaccompanied by *any* record citations, let alone citations establishing that they accurately reflect the conditions "immediately after the slip-and-fall incident" as argued by Plaintiff. *See id.* at 3–6, 15. "Statements by counsel in briefs are not evidence[.]" *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013) (citation omitted); *see Chang v. Carnival Corp.*, 839 F.3d 993, 997 (11th Cir. 2016); *see also King v. Lawson*, No. 21-14492, 2024 WL 3355179, at *4–5 (11th Cir. July 10, 2024); *McLaughlin v. Brennan*, No. 3:13-cv-987-J-34MCR, 2016 WL 1271514, at *2 n.6 (M.D. Fla. Mar. 31, 2016).[8]

So, the pictures on which Plaintiff rests his Response do not provide any evidentiary basis to deny summary judgment. *See King*, 2024 WL 3355179, at *4–5; *Chang*, 839 F.3d at 997; *Travaglio*, 735 F.3d at 1270; *McLaughlin*, 2016 WL 1271514, at *2 n.6; *see also Robinson v. Sauls*, 46 F.4th 1332, 1338 n.3 (11th Cir. 2022) (holding the district court was not required to consider photographs on summary judgment where the party "submitted no witness testimony or other evidence that would

[8] Though not cited by Plaintiff, and thus not required to be considered by the Court, *see* Fed. R. Civ. P. 56(c)(3), the Court notes that Plaintiff testified that Mr. Jacobs took photographs depicting what he alleges to be the sausage that he slipped on and gave them to his attorney. Doc. 21-1 at 54–55. But even assuming *arguendo* (or, frankly, speculating) that those pictures are the ones embedded in the Response—again the Response contains no record citations of where any pictures came from or what they are—that does not cure the deficiencies herein. No testimony from Mr. Jacobs has been submitted. And while Plaintiff claims the pictures from Mr. Jacobs accurately depict what he slipped on, he never even looked at those pictures. *Id.* at 55. Even if he had, he did not see (and does not know) what he slipped on. *Id.* at 53–54. In short, even assuming without any evidence that the pictures in the Response are those taken by Mr. Jacobs, Plaintiff—who went to the hospital after the fall and offered no testimony as to when and under what circumstances any pictures were taken by Mr. Jacobs—cannot authenticate that any such pictures (which he never looked at) accurately depict the conditions proximate to the fall (which he does not know and did not see). *See id.* at 53–55.

authenticate the photographs");[9] *cf. Mohammed v. GHX Glob. Healthcare Exch. Inc.*, No. 21-10108, 2022 WL 1615925, at *2 (11th Cir. May 23, 2022).

Beyond that, even if considered (and they need not be), the photographs embedded in the Response are ambiguous. Doc. 26 at 3–6. They suggest at most a dirty floor depicting what appears to be crumbs (that Plaintiff is not alleged to have slipped on) and a dark spot (but no apparent sausage). *Id.* at 4–6. "Where photos are ambiguous, as the ones here, as to the condition and duration of the condition revealed, they do not support an inference of constructive notice." *Speedway*, 331 So. 3d at 736 ("'If the photograph is ambiguous on this point and what is shown makes it questionable whether a significant period has passed, the jury would necessarily be required to indulge in speculation to determine the duration of the condition. In such a case the photograph without live testimony is insufficient.' … In this case, what was shown in the photograph not only required speculation as to how long the condition existed, but it also required speculation on the part of the jury as to the very existence of the condition of buildup itself." (emphasis removed; citation omitted)); *see also Chi Nguyen v. Costco Wholesale Corp.*, No. 19-cv-80393, 2020 WL 1976215, at *6 (S.D. Fla. Apr. 24, 2020) ("No witness testified to what the photographs upon which Plaintiffs rely show, where Plaintiff fell in relation to what is depicted in those photographs, and

---

[9] *Robinson* held that "the district court did not err by failing to consider the photographs" for multiple "reasons[.]" *Robinson*, 46 F.4th at 1338 n.3. Specifically, *Robinson* offered both the failure to bring the photographs to the district court's attention and the failure to submit any evidence to authenticate them. *See id.* Each "alternative holding counts because in this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings." *Bravo v. United States*, 532 F.3d 1154, 1162 (11th Cir. 2008); *see also Spencer v. Benison*, 5 F.4th 1222, 1230 n.11 (11th Cir. 2021); *Hitchcock v. Sec'y, Fla. Dep't of Corr.*, 745 F.3d 476, 484 n.3 (11th Cir. 2014).

how or why any person shown in the photographs would have had the ability or the opportunity to see the liquid on which Chi Nguyen fell or cause it to be removed in time to prevent the fall. Plaintiffs assertion that these photographs, combined with the fact that the location of the fall is not identified as a sweep zone on the walk-through list, provides sufficient evidence to allow a jury to infer that the condition had been present long enough that Costco should have discovered it, is rejected as rank speculation."). They do not, as Plaintiff suggests, clearly depict scuffing, footprints, dirt, changes in the consistency of the substance, and similar indicia that sausage grease had existed for sufficient time to place Defendant on constructive notice in accordance with Fla. Stat. § 768.0755(1)(a). Doc. 26 at 14–15. And "speculation, conjecture, and wishful thinking" are not evidence to preclude summary judgment. *Joyner v. City of Atlanta*, 170 F.4th 1320, 1334 (11th Cir. 2026); *see Stardust*, 899 F.3d at 1170; *see also Chi Nguyen*, 2020 WL 1976215, at *6; *Speedway*, 331 So. 3d at 736.

Thus, there is no genuine dispute as to any material fact such that a reasonable jury could return a verdict in favor of Plaintiff as to constructive knowledge under Fla. Stat. § 768.0755(1)(a).

**ii. Constructive Knowledge under Fla. Stat. § 768.0755(1)(b)**

No evidence has been offered as to other falls inside the restaurant at issue, and there is instead evidence of the absence of any such falls in the three years preceding Plaintiff's fall. Doc. 26-2 at 33–34. Plaintiff nevertheless argues that five lines of testimony from Defendant's corporate representative establish constructive knowledge

under Fla. Stat. § 768.0755(1)(b). *See* Doc. 26 at 16–17. Specifically, Plaintiff cites to the following exchange:

> Q Would you agree that it is expected that food will end up in the floor at Waffle House?
> A I wouldn't put it that -- I would say that it happens because customers drop things and children drop things. And so, there are -- there is food that ends up on the floor. Yes.

*Id.* at 17 (citing Doc. 26-2 at 27–28).[10] Per Plaintiff, this establishes that "[t]here is no dispute that food and grease ends up on the floor often at Waffle House" such that "[t]here is sufficient evidence for a reasonable jury to find that the presence of grease and sausage on the floor at Waffle House is a condition that occurs with regularity and is therefore foreseeable." *Id.* Plaintiff's argument is unavailing.

A plaintiff can show constructive knowledge under Fla. Stat. § 768.0755(1)(b) by proving that a "condition occurred with regularity and was therefore foreseeable." *Safonte*, 388 So. 3d at 35 (quoting Fla. Stat. § 768.0755(1)(b)). "To prove a dangerous condition occurred with regularity, the plaintiff must provide 'evidence of recurring or ongoing problems that could have resulted from operational negligence or negligent maintenance[.]" *Id.* at 36 (citations omitted); *see also Kincaid*, 430 So. 3d at 150.

As a preliminary matter it does appear that Plaintiff's bare premise—that customers may drop food while eating at Defendant's restaurant—is itself a potential basis for the requisite constructive knowledge under Fla. Stat. § 768.0755(1)(b). *See Safonte*, 388 So. 3d at 36 ("'The dispositive issue is whether the specific method of

[10] Again, this brief exchange is the only record citation in the *entire* Response. *See generally id.*

operation was negligent and whether the accident occurred as a result of that negligence.' But here, Publix was not responsible for the yogurt container falling out of the shopping cart and spilling onto the floor. Rather the invitee was solely responsible for the yogurt container falling out of his shopping cart. Therefore, the yogurt spill was not the result of a regularly occurring dangerous condition created by Publix that could support an imputation of constructive knowledge to Publix." (citation omitted)). Further undermining Plaintiff's premise and argument on the facts of this case, constructive knowledge under Fla. Stat. § 768.0755(1)(b) requires that a dangerous condition be foreseeable due to its regular occurrence. *See id.*; *see also Kincaid*, 430 So. 3d at 149. But Plaintiff neither explains how food merely reaching the floor constitutes a dangerous condition nor rebuts the undisputed testimony that Defendant mops the floors at the end of each shift (three times daily), sweeps throughout the day as needed, and has not had any other fall inside the restaurant in the three years preceding Plaintiff's. *See* Doc. 26-2 at 10–12, 33–36.

Alternatively, and even if Plaintiff's premise rested on the requisite specific mode of negligent operation, Plaintiff misconstrues and exaggerates the testimony of Defendant's corporate representative. There is no evidence that food spills or drops occur "often," *see* Doc. 26 at 16–17, or "with regularity[,]" *see* Fla. Stat. § 768.0755(1)(b). To the contrary, the corporate representative did *not* place any number or frequency on the occurrence of spills; said he "wouldn't put it that" food "is expected" to end up on the floor and could say only that "it happens"; and did not testify as to how many times it happens that food or spills end up on the floor in the

restaurant. Doc. 26-2 at 27–28. The terse and vague exchange cited by Plaintiff—again, with no evidence of a single prior fall in the restaurant—does not approach the "regularity" required by Fla. Stat. § 768.0755(1)(b). *See, e.g.*, *Kincaid*, 430 So. 3d at 150 ("Kincaid did not present evidence that customers, with any frequency, slipped on gel packs that migrated from where the gel packs were initially placed. The vague record evidence that perhaps a few slip-and-falls on gel packs had occurred in a store of this magnitude does not rise to the level of 'regularity.'"); *see also Phillips*, 821 F. App'x at 960 ("Phillips has failed to show that the 'condition occurred with regularity and was therefore foreseeable.' The record shows that no falls had occurred on the steps or surrounding area before or after Phillips' fall. Although a server 'almost' fell on the step shortly after Phillips fell, there is no evidence that a substance on the step is what caused that slip. … And Lindvall's opinions that The Crab Trap's proximity to the beach created the 'potential' for wet floors or the 'possibility' that humidity could make the steps slippery are insufficient to show that the conditions leading to Phillips' fall were foreseeable, because they are based on 'hunches' unsupported by any probative evidence." (internal citation omitted)); *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1014 (11th Cir. 2019) (holding insufficient evidence of regularity where, among other evidence, a former employee "testified that he had observed on a few occasions a leak from the ceiling above the area where [the plaintiff] fell," but "he had 'no knowledge as to the specific date and time [he] observed the leaks' and did not know of anyone falling because of the leaks" (alteration in *Palavicini*)); *cf. Pussinen v. Target Corp.*, 731 F. App'x 936, 939 (11th Cir. 2018) (rejecting as insufficient

conclusory arguments on foreseeability of children dropping substances because the proffered "string of assumptions does not satisfy [the plaintiff's] burden to present *evidence* that the condition leading to her fall 'occurred with regularity'").

Thus, there is no genuine dispute as to any material fact such that a reasonable jury could return a verdict in favor of Plaintiff as to constructive knowledge under Fla. Stat. § 768.0755(1)(b).

## IV. Conclusion

Accordingly, it is **ordered** that:

1. The Motion, Doc. 21, is **granted**.

2. The Clerk of Court is **directed** to enter judgment in favor of Defendant and against Plaintiff, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on November 5, 2026.

Samuel J. Horovitz
United States Magistrate Judge

Copies to:

Counsel of Record